ORIGINAL

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

OHIO CASUALTY GROUP, as Subrogee of :          No. 1:CV-01-785
Eric Staub                           :
                    Plaintiff         :
                                      :
vs.                                   :          CIVIL ACTION - LAW
                                      :
J&J INVESTMENT MANAGEMENT             :                    FILED
COMPANY, AL BUDROW                    :          HARRISBURG, PA
      Defendant and Third Party Plaintiff :
                    vs.               :          Judge Kane    AUG 2 6 2002
RICHARD EDWARD WONDERS,               :
t/a WONDER GENERAL CONTRACTING        :          MARY E. D'ANDREA CLERK
      Third Party Defendant           :          Per_____
                                                      Deputy Clerk

**PRE-TRIAL MEMORANDUM OF DEFENDANT RICHARD R. WONDERS**
**t/a WONDER GENERAL CONTRACTING**


Date of Conference:      August 29, 2002   10:00 a.m.

A.     **BASIS OF FEDERAL COURT JURISDICTION**

       This Court has jurisdiction pursuant to 28 U.S.C. §1332.  Third Party

Defendant Richard Wonders is a resident of Pennsylvania.

B.     **SUMMARY OF FACTS**

       There was a fire on May 26, 2000.  It has been determined that the fire

originated at 213 N. Broad Street.  This home was owned by J & J Investments.

At the time of the fire, the property was vacant.  Vandals broke into the home at

213 N. Broad Street and started a fire.  The individuals have been charged and

convicted of arson.  As a result of the actions of the vandals, the fire spread to the

1

Staub' home which was insured with Ohio Casualty Group.

The claim against Third Party Defendant Wonders is that he was hired by J & J Investments to secure the property and/or remove certain debris from the property. The facts in this case clearly establish that Mr. Wonders was not hired by J & J Investment to perform the services. Furthermore, the facts also establish that Richard Wonders did not hire Al Budrow to perform these services for J & J Investments. The facts establish that Al Budrow was retained by J & J Investment to perform these services. Third Party Defendant Wonders was not a "middle man" in this transaction. Thus, Third Party Defendant Wonders has no liability for this matter.

## C.    <u>UNDISPUTED FACTS</u>

1.  There was a fire on May 26, 2000 at 213 N. Broad Street.

2.  The property at 213 N. Broad Street was owned by J & J Investments.

3.  The fire which originated at 213 N. Broad Street was the result of an act of arson by vandals who broke into 213 N. Broad Street and intentionally started the fire with a flammable liquid.

4.  The fire was investigated by Detective Troy Cromer of the York City Police Department.

5.  Al Budrow was in the property after Richard Wonders and before the fire.

2

6. John Giambalvo is one of the principals of J & J Investment.

7. John Giambalvo told Detective Cromer that he had retained Al Budrow
   to clean up the premises. A copy of Mr. Giambalvo's statement to
   Detective Cromer is attached hereto as Exhibit 1.

8. Al Budrow has told Detective Cromer that he was the individual who
   was hired by J & J Investments to clean up the premises. A copy of
   his statement to Detective Cromer is attached hereto as Exhibit 2.

9. Al Budrow has given a deposition. He has testified that he was
   retained by John Giambalvo on behalf of J & J Investments. He also
   stated that Richard Wonders was not involved in this transaction.
   Richard Wonders was not the general contractor for this project.
   Pages 12 through 16 of Al Budrow's deposition transcript are attached
   hereto as Exhibit 3.

## D. __DAMAGES__

This lawsuit involved the subrogation interest of Ohio Casualty. It does not involve the uninsured claim of Eric Staub. If Plaintiff presents an uninsured claim from Mr. Staub, then there is no diversity jurisdiction for this matter. Mr. Staub is a resident of Pennsylvania.

The claim simply involves the property damage sustained to the Staub' residence which was covered by the Ohio Casualty policy. See Plaintiff's Pre-Trial Conference Memorandum for a more specific list of damages.

3

**E.    WITNESSES**

    1.  Detective Troy Cromer

    2.  John Giambalvo

    3.  Al Budrow

    4.  Richard Wonders

Third Party Defendant Wonders reserves the right to add or delete from this list of witnesses upon proper notice to the Court and other counsel.

**F.    EXPERT WITNESSES**

Third Party Defendant Wonders will not need the services of an expert witness.  If this should change, he will give proper notice to the Court and other counsel.

**G.    SPECIAL COMMENT**

None at this time.

**H.    LEGAL ISSUES**

    1.  Whether Third Party Defendant Wonders owed any duty in connection with the property at 213 N. Broad Street.

    2.  Whether Third Party Defendant Wonders breached any such duty.

**I.    STIPULATIONS**

Third Party Defendant Wonders has no liability for this matter.  It is specifically requested that the parties would stipulate to his dismissal.

**J.**    **NUMBER OF TRIAL DAYS**

2 – 2 ½ days

**K.**    **OTHER MATTERS PERTINENT TO THE CASE**

1.  There are no companion federal lawsuits.  There are two (2) similar lawsuits that are pending in State Court in York County, Pennsylvania.

2.  Third Party Defendant Wonders is only a party to one of these lawsuits.

**L.**    **EXHIBITS**

Third Party Defendant Wonders' Exhibits consist of:

1.  Detective Cromer's report of his conversation with John Giambalvo.

2.  Detective Cromer's report of his conversation with Al Budrow.

3.  The entire investigative file from the York City Police Department.

**M.**    **SETTLEMENT**

Undersigned counsel has advised his carrier of Local Rule 16.2 and his carrier will be available via telephone to respond to any settlement discussions.

**N.**    **VIDEOTAPE DEPOSITIONS**

None at this time.

5

GRIFFITH, STRICKLER, LERMAN,
SOLYMOS & CALKINS

BY: _____
MICHAEL B. SCHEIB, ESQUIRE
Attorney I.D. No. 63868
110 South Northern Way
York, Pennsylvania  17402
(717) 757-7602
Attorneys for Third Party Defendant

6

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OHIO CASUALTY GROUP, as Subrogee of<br>Eric Staub | : | No.  1:CV-01-785 |
| Plaintiff | : | |
| vs. | : | CIVIL ACTION - LAW |
| | : | |
| J&J INVESTMENT MANAGEMENT<br>COMPANY,  AL BUDROW | : | |
| Defendant and Third Party Plaintiff | : | |
| vs. | : | |
| RICHARD EDWARD WONDERS, | : | |
| t/a WONDER GENERAL CONTRACTING | : | |
| Third Party Defendant | : | |

## CERTIFICATE OF SERVICE

AND NOW, this 21ˢᵗ day of August, 2002, I, Michael B. Scheib, Esquire, a

member of the firm of GRIFFITH, STRICKLER, LERMAN, SOLYMOS & CALKINS,

hereby certify that I have this date served a copy of the Pre-Trial Memorandum of

Richard Wonders t/a Wonders General Contracting Claim, by United States Mail,

addressed to the party or attorney of record as follows:

Martin A. Durkin, Jr., Esquire
Durkin & Abel
One Penn Center, Suite 1520
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103

Ohio Casualty Group
c/o Hayes A. Hunt, Esq.
1900 Market Street
Philadelphia, PA  19103

7

Al Budrow
3979 Craig Avenue
Dover, PA  17315

GRIFFITH, STRICKLER, LERMAN,
SOLYMOS & CALKINS

BY:_____
MICHAEL B. SCHEIB, ESQUIRE
Attorney I.D. No. 63868
110 South Northern Way
York, Pennsylvania  17402
(717) 757-7602
Attorneys for Defendant Wonders

SEP-05-01 03:56 PM   MCA●●S FIRE & EXP. INV.   717 ●1 2306           P.08

# City of York Police Department
## SUPPLEMENT (Complaint Report)
50 West King Street        York, Pennsylvania 17405
Phone (717) 846 - 1234

CASE NO.

PAGE 1 OF 1

| CODE SECTION | CRIME | DATE CRIME REPORTED | LOCATION |
|---|---|---|---|
| 0900-2 | Arson | 05/26/2000 | 213 N. Broad Street |

| VICTIM'S NAME - LAST, FIRST, MIDDLE (FIRM IF BUS.) | ADDRESS   RESIDENCE | BUSINESS | PHONE |
|---|---|---|---|
| Giambalvo, John | 213 Knob Creek Lane, York PA 17402 | | (717)-840-1031 |

On 31 May 2000 at 1000 hrs. this officer conducted a neighborhood canvass of the 200 block N. Broad St. The interviews of victims and neighbors follows.

213 N. Broad Street, Owner:    John W. Giambalvo
213 Knob Creek Lane
York, PA 17402    #840-1031

Mr. Giambalvo stated that his property has been vacant since around the end of January, beginning of February, 2000. He stated that he had to evict his previous tenants Louise Hudson and Joseph Funderberk. The eviction was due to unpaid rent and the destruction of his property. He stated that they had left a large amount of trash behind inside and outside on the property. He stated that he had taken the tenants to District Justice Farrell's office for the unpaid rent and the eviction order. The order was filed on the 12 January 2000 at 1441 hrs. with Docket Number# LT-0000458-99 for a Total of $1,532.50 to be paid by the defendants. Mr. Giambalvo stated that he had hired an Al Budrow of Dover, PA to clean up the property and restore it. He stated that due to his business he is unable to continuously check the property and had left the securing of the property to Al Budrow. He stated that he was unaware of the property being unsecured. He stated that he was aware of the trash inside and outside to the rear of the property. Mr. Giambalvo provided insurance information on the property.

Insurance Company:    Farmer's Mutual
Ins. Agent:    Black, Davis & Shue/   Don Russell #755-7108
Ins. Adjuster:    Paul Zendonis  #329-9564
Policy #:    F 306359,  Expires 10/00

The property was insured for $50,000 (no contents). This officer confirmed the information with Don Russell and he advised that there have been no policy changes since 5 September 1997. Mr. Giambalvo advised that the utilities to the property were disconnected. This officer contacted Columbia Gas of PA and spoke with a Susan in customer service. She advised that service was disconnected on the 8 March 2000 by the previous tenant, Joseph Funderberk. This officer also contacted GPU Energy and spoke with an Angela in customer service. She advised that service was disconnected on 8 March 2000 by the previous tenant, Joseph Funderberk.

This officer inquired about citations received by Mr. Giambalvo from the City of York in regards to codes violations. He stated that he received a letter from the Bureau of Permits & Health Licensing notifying him that he had 5 days to have the rubbish removed from the interior and exterior of the property. The letter was dated 10 May 2000 and stated that he would receive fines up to $1,000 per day for each infraction. He stated on 12 May 2000 he received a citation from the same city department for violations of the York City Property Maintenance Code, section 305.1. Mr. Giambalvo stated that he was advised that other letters were sent but to a different address than his current residence. He stated that is why he hired Mr. Budrow, to clean up the property. He stated that he had cleaned up the back yard and was working on the inside of the property. Mr. Giambalvo could not provide any additional information. His property received severe fire damage to all three floors.

Patrol Division                    Investigative Division                    Records Division

| INVESTIGATING OFFICERS. | RECORDING OFFICER | NO. | DATE AND TIME | EXTEND |
|---|---|---|---|---|
| T. A. Cromer | Troy A. Cromer | 198 | 06/07/00 2347 | |

| FURTHER | X YES | COPIES | DETECTIVES | DOMESTIC VIOLENCE UNIT | CR (LEAVE BLANK) | |
| ACTION | NO | TO | JUVENILE   PATROL | | | |
| | | | X DIST.ATTY | OTHER_____ | REVIEWED BY | DATE |
| | | | SO/PD | OTHER_____ | | |

Exhibit A

# City of York Police Department
## SUPPLEMENT (Complaint Report)
50 West King Street          York, Pennsylvania 17405
Phone (717) 846 - 1234

CASE NO.

PAGE 1 OF 1

| CODE SECTION | CRIME | DATE CRIME REPORTED | LOCATION |
|---|---|---|---|
| 0900-2 | Arson | 05/26/2000 | 213 N. Broad Street |

| VICTIM'S NAME - LAST, FIRST, MIDDLE (FIRM IF BUS.) | ADDRESS | RESIDENCE | BUSINESS | PHONE |
|---|---|---|---|---|
| Giambalvo, John | | 213 Knob Creek Lane, York PA 17402 | | (717)-840-1031 |

On 31 May 2000 at 1000 hrs. this officer conducted a neighborhood canvass of the 200 block N. Broad St. The interviews of victims and neighbors follows.

**213 N. Broad Street**, Owner:    John W. Giambalvo
213 Knob Creek Lane
York, PA 17402    #840-1031

This officer spoke with a Al Budrow of 3975 Craig Lane, Dover, PA 17315 #292-9012. Mr. Budrow is the man hired by Mr. John Giambalvo to clean up the property at 213 N. Broad Street. Mr. Budrow stated that he was hired approximately one month ago by the property owner to clean up the rubbish inside and outside, and to restore the property to a condition to be rented again. Mr. Budrow advised that the last time he was at the property was on Tuesday or Wednesday of the week of 21 May 2000. He stated that he had removed all the rubbish from the back yard and placed it inside the property on the first floor in the front room in bags. He stated that he had begun work on the interior and had removed all the rubbish from the second and third floors. He stated that the rubbish from those floors was placed into bags and put on the first floor in the front room. He stated that there was nothing on the second and third floors, that they were bare. He stated that he had placed a new lock on the front door and that it would only lock from the inside. He stated that the front door was locked and secured. He stated that he had used screws and screwed the rear screen door to the jam so that it could not be opened. Mr. Budrow advised that the rear door did not lock. In order to lock the door, he placed a wire around the door knob on the inside of the door. The wire ran out around the door between the door and jam and through an opening in the screen door. He then tied the wire around a piece of electrical conduit that ran up the wall. He stated that this was the only way to secure the rear door of the property. Mr. Budrow stated that he had paint brushes and one gallon of paint thinner, ¾ full, sitting on the south wall counter of the kitchen. He advised that on today's date when he boarded the property up from the fire that the paint brushes were still there but, the thinner was gone from inside the kitchen. The fire department advised that they did not remove anything from the kitchen the night of the fire. This officer and the investigators operating on the scene also did not remove anything from the kitchen. The kitchen had received minor fire damage, just smoke, heat and water. Evidence Sample #2 which was taken from the front room, middle of the room from the fire debris was labeled 1- piece Subfloor and Trash. This piece of evidence had a strong odor of a hydrocarbon based material i.e.: paint thinner and/or kerosene. This sample was sent to PSP Lab for chemical analysis for an accelerant. This piece of evidence that was mixed in with the trash/fire debris is now believed to be the paint thinner container. The sample was a white piece of plastic material melted with several pieces of trash adhered fast. Mr. Budrow advised that the container was white with an unknown label. He stated he purchased it in a local hardware store. Results from this sample have not yet been received. Mr. Budrow could not provide any more additional information.

| Patrol Division | Investigative Division | Records Division |
|---|---|---|

| INVESTIGATING OFFICERS | RECORDING OFFICER | NO. | DATE AND TIME | ENTERED |
|---|---|---|---|---|
| T. A. Cromer | Troy A. Cromer | 198 | 06/07/00 2347 | |

| FURTHER | X YES | COPIES | DETECTIVES | DOMESTIC VIOLENCE UNIT | CR (LEAVE BLANK) | | |
|---|---|---|---|---|---|---|---|
| ACTION | NO | TO | JUVENILE | PATROL | | | |
| | | | X DIST.ATTNY | OTHER_____ | REVIEWED BY | | DATE |
| | | | SO/PD | OTHER_____ | | | |

Exhibit B

12

```
1    A.    Again, please.

2    Q.    How did you get paid for your work on painting

3          the second project that--

4    A.    Check from Rich Wonders -- well, Wonders General

5          Contracting, not personally.

6    Q.    How long did that work last?

7    A.    That lasted some weeks.  I don't remember the

8          total time frame of that.

9    Q.    Did you talk to John Giambalvo during the course

10         of that project?

11   A.    Yes.

12   Q.    Again, about color schemes, but anything else

13         other than that?

14   A.    Well, near the end of the project he asked me

15         about -- we talked about the Broad Street

16         property.

17   Q.    Now we're talking about 213 North Broad Street?

18   A.    I believe that's the correct address, yes.

19   Q.    It took me a while to get there, but that's why

20         we're here.  So the 213 North Broad Street, what

21         was the conversation you had with Mr. Giambalvo?

22   A.    The conversation that I had with him about the

23         Broad Street property was having to do with the

24         fact that he needed maintenance done on the

25         exterior of the property immediately because of
```

Exhibit C

13

1           some health code things with the city; namely,

2           removal of debris and the cutting of the lawn.

3    Q.  Do you remember what time period this was?  Was

4           it in May of 2000?  Was it in April of 2000, do

5           you remember?

6    A.  It was the week prior to the fire.

7    Q.  So do you know the fire to be on May 26th, 2000?

8    A.  I believe that's correct.

9    Q.  So it was about a week before that?

10   A.  Yeah.

11   Q.  So what did Mr. Giambalvo say about work that

12          needed to be done at the property?

13   A.  Just that there were two phases that needed to

14          be done first and foremost and there was no

15          contract on this, just, you know, I need it done

16          immediately was the trash removal and the mowing

17          of the lawn.

18              Then secondarily there was interior work to

19          be done to the property to get it ready for

20          rehabilitation as it was currently vacant.

21          There again there was no contract, no set

22          figures or anything there either.

23   Q.  Did Richard Wonders ever talk to you about the

24          work at 213 North Broad Street prior to you

25          going there?

14

```
 1   A.    Yes.

 2   Q.    What did he tell you about the work to be

 3         performed at the property?

 4   A.    Prior to going there, he had informed me that

 5         Mr. Giambalvo wanted some work done there, and

 6         he wanted me to look at it to see if I was

 7         interested in taking the project.

 8   Q.    Did he say anything else specifically about the

 9         property other than that, other than you taking

10         a look at it?

11   A.    He indicated that he was not interested in being

12         a general contractor on that job, if that's what

13         you're asking.

14   Q.    He told you that?

15   A.    Yeah, yeah.

16   Q.    I'm just asking what else he said.

17   A.    Yeah.  He indicated that he was not interested

18         in being a general contractor on that job.

19   Q.    Did he talk about Mr. Giambalvo's desire to

20         perform a remodeling project at the property?

21   A.    Yes, he did.

22   Q.    What did he say regarding the remodeling of the

23         property?

24   A.    Just that Mr. Giambalvo had a price in mind of

25         what he could put into the property.  I think it
```

15

```
1            was around, if I'm not mistaken, it was around

2            2,000, 2,500 that he was looking to spend and

3            could the work that would be needed be performed

4            for that amount.

5    Q.     Did he tell you he had been to the property

6           prior to calling you?

7    A.     Who he?

8    Q.     Richard Wonders.

9    A.     Had he told me that he was there prior to that?

10   Q.     Yes.

11   A.     No, he had not told me he was there prior to

12          that.

13   Q.     What did he say about the remodeling job for

14          $2,000?  Was it specific about what work you

15          were going to perform?

16   A.     No, no.  It was unspecified.  It was what was my

17          recommendation to Mr. Giambalvo.

18   Q.     Did he tell you he was going to make a

19          recommendation to Mr. Giambalvo about the

20          remodeling work?

21   A.     No, he did not.

22   Q.     Again, this is about one week prior to the fire,

23          or was it before that?

24   A.     Yes, I believe so.

25   Q.     Well, that's--
```

16

1     A.     To the best of my recollection.

2     Q.     You had a conversation with Richard Wonders

3            about a week before the fire.  Is that right?

4     A.     Um-hum.  It all transpired in a few days.

5     Q.     And then I guess in a day or two did you have a

6            conversation with Mr. Giambalvo about performing

7            work at the property?

8     A.     Yes.

9     Q.     That's again within one week of the fire.  Is

10           that right?

11    A.     Yes.

12    Q.     Did Richard Wonders say he was going to inspect

13           the property and see if he wanted to do the

14           remodeling work?

15    A.     Did he tell me that, no.

16    Q.     So at what point did he say he did not want to

17           be a general contractor of the project?  Did he

18           just say that for no reason, or was it in

19           response to something?

20    A.     Just basically no reason.  We met at the

21           property.  He handed me the key and said if

22           you're interested in this, you know, I'm too

23           busy to really deal with it.

24    Q.     So you guys were at the property about a week

25           before the fire.  Is that right?

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

OHIO CASUALTY GROUP, as Subrogee of  :    No. 1:CV-01-785
Eric Staub                              :
                  Plaintiff      :
vs.                           :    CIVIL ACTION - LAW
                              :
J&J INVESTMENT MANAGEMENT     :
COMPANY, AL BUDROW          :
    Defendant and Third Party Plaintiff   :    Judge Kane
              vs.             :
RICHARD EDWARD WONDERS,      :
t/a WONDER GENERAL CONTRACTING  :
    Third Party Defendant         :

## SPECIAL VERDICT SLIP

1.    Was Defendant J & J Investments negligent?

      Yes _____      No _____

      IF YOU ANSWER QUESTION NO. 1 "YES", PROCEED TO QUESTION NO. 2.

      IF YOU ANSWER QUESTION NO. 1 "NO", PROCEED TO QUESTION NO. 3.

2.    Was Defendant J & J's negligence a substantial factor in causing Plaintiff's
      injury?

      Yes _____      No _____

      PROCEED TO QUESTION NO. 3.

3.    Was Third Party Defendant Al Budrow negligent?

      Yes _____      No _____

      IF YOU ANSWER QUESTION NO. 3 "YES", PROCEED TO QUESTION NO.
        4.

IF YOU ANSWER QUESTION NO. 3 "NO", PROCEED TO QUESTION NO. 5.

4.    Was the negligence of Third Party Defendant Al Budrow a substantial factor in causing Plaintiff's injury?

Yes _____          No _____

PROCEED TO QUESTION NO.   5.

5.    Was Third Party Defendant Richard Wonders negligent?

Yes _____          No _____

IF YOU ANSWER QUESTION NO. 5 "YES", PROCEED TO QUESTION NO.
        6.

IF YOU ANSWER QUESTION NO. 5 "NO", PROCEED TO QUESTION NO. 7.

6.    Was the negligence of Third Party Defendant Richard Wonders a substantial factor in causing Plaintiff's injury?

Yes _____          No _____

PROCEED TO QUESTION NO.   7.

7.    Taking the combined negligence that was a substantial factor in causing Plaintiff's injury as one-hundred percent (100%), what percentage of that causal negligence was attributed to each party?

Percentage of causal negligence attributable to Defendant J & J Investments
(answer only if you have answered "Yes" to Questions 1 and 2).

_____%

Percentage of causal negligence attributable to Third Party Defendant Al Budrow
(answer only if you have answered "Yes" to Questions 3 and 4).

_____%

Percentage of causal negligence attributable to Third Party Defendant Richard Wonders

(answer only if you have answered "Yes" to Questions 5 and 6).

_____ %

8.    State the amount of damages, if any, sustained by Plaintiff Ohio Casualty as a result of the fire.


_____                        _____
DATE                                           JURY FOREPERSON